JAMES McMANIS (40958)
GEOFFREY BENTZEL (250073)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:  408-279-8700
Facsimile:  408-279-3244

Attorneys for Plaintiff,
MING-YIN HAO

FILED
2008 AUG 25 P 1:4[?]
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

E-FILING

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MING-YIN HAO,

    Plaintiff,

vs.

COUNTY OF SANTA CLARA, a public entity, SANTA CLARA COUNTY SHERIFF'S OFFICE, a department of the County of Santa Clara, DANIEL J. FOREST, an individual, and DOES 1-50, inclusive,

    Defendants.

Case No. C08 04048 PVT

**COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

Ming-yin Hao ("Plaintiff") alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 as the matter in controversy exceeds $75,000, exclusive of interest and costs, and arises under federal law.

2.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the action occurred in this judicial district.

---
1
COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

## **GENERAL ALLEGATIONS**

3.  Plaintiff, Ming-yin Hao, is an individual currently residing in Sunnyvale, California. Plaintiff is an upstanding member of the community and an accomplished electrical engineer. Plaintiff was awarded a Ph.D. in electrical engineering from the University of Texas at Austin and is an inventor on twenty-five United States patents. Plaintiff is the Vice-President of Technology Applications at UMC-USA in Sunnyvale, CA ("UMC-USA"). UMC-USA is a subsidiary of UMC, a Taiwanese semiconductor foundry.

4.  Defendant County of Santa Clara ("County") is, and at all times herein mentioned was, a public entity duly organized and existing under the laws of the State of California.

5.  Defendant Santa Clara County Sheriff's Office ("Sheriff's Office") is, and at all times herein mentioned was, a department of County and duly organized and existing under the laws of the State of California.

6.  Defendant Daniel J. Forest ("Deputy Forest") is, and at all times herein mentioned was, an individual employed by the Sheriff's Office as a deputy sheriff.

7.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this claim to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

8.  At all times herein mentioned, defendants, including those sued herein as DOES 1 through 50, were the agents, servants, and employees of their co-defendants and in doing the things herein alleged were acting in the scope of their authority as such agents, servants and employees, under the direction and supervision and with the permission and consent of their co-defendants.

COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

**FACTS**

9. On June 13, 2007, an unidentified patient ("patient") visited the office of Stanley P. Chin, D.D.S. ("Dr. Chin"), located at 450A East Calaveras Boulevard in Milpitas, California, to obtain a new patient dental exam, cleaning and x-rays. To receive these services, the patient filled out a Dental Registration History Form ("Form") that listed dental insurance information for a Janet Yiu ("Yiu") and signed Yiu's name at the bottom of the Form.

10. Yiu had recently moved to Cupertino, CA and had her mail forwarded from her former San Jose address. On July 15, 2007, Yiu received a bill from Delta Dental, her dental insurance company, which was forwarded from her former apartment at 135 Rio Robles in San Jose.

11. The Delta Dental bill showed that Yiu received an examination, cleaning and dental x-rays on June 13, 2007 at Dr. Chin's office. The bill for these services was $293.00. Delta Dental covered a portion of the charge.

12. After receiving the bill, Yiu contacted Tammy Wharton ("Wharton"), an employee at Dr. Chin's dental office. Yiu explained to Wharton that she suspected someone had used her identity to have the dental work charged to her insurance company. Wharton told Yiu that she remembered the patient who received the dental care because she had assisted her with the insurance paperwork.

13. On July 16, 2007, Deputy Forest met Yiu at her residence in Cupertino, CA to investigate the matter.

14. After speaking with Yiu, Deputy Forest contacted Wharton, who said that she remembered the patient that used Yiu's dental insurance because she was a walk-in patient and not a referral. The patient was scheduled to return on August 8, 2007, for a follow-up appointment. (This appointment was subsequently cancelled by the patient.)

15. On July 17, 2007, Deputy Forest spoke to Dr. Chin, who said that he also remembered the patient because she was not a regular patient. Dr. Chin said that the patient told him that she often visited the Milpitas library across the street and that is how she became aware

3
COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

of his dental office. She also told Dr. Chin that she was married and had no children.

16. Dr. Chin described the patient as Asian with a slight Chinese accent, shoulder length black hair, slight or small build, and in her mid-thirties. Wharton described the patient as Asian with a small build and dark hair.

17. According to the July 17, 2007 Sheriff's Office Incident Report, Deputy Forest reviewed the Form, which was handwritten and reflected Yiu's personal information. The Form also included Yiu's husband's name, birth date, social security number and Delta Dental insurance information.

18. The patient signed the Form using Yiu's name and listed her 135 Rio Robles address in San Jose. However, the patient listed apartment number "338" instead of "348."

19. On July 17, 2007, Deputy Forest visited the apartment complex at 135 Rio Robles, San Jose, CA. Deputy Forest contacted Leasing Consultant Marissa Leadbetter ("Leadbetter") and explained to her that he needed to contact the tenants in units 348 and 338. Leadbetter provided Deputy Forest with the names of the tenants in both units. Two Asian males occupied apartment 348, Yiu's former apartment, while apartment 338 was occupied by plaintiff.

20. Leadbetter provided Deputy Forest with a description of plaintiff and he concluded that the description was "similar" to the descriptions of the patient provided by Wharton and Dr. Chin. (Asian, small build and dark hair). Deputy Forest obtained plaintiff's twelve-year old Department of Motor Vehicles ("DMV") photograph and concluded that it was "similar" to the physical descriptions provided by Wharton and Dr. Chin.

21. After speaking with Dr. Chin, Wharton and Leadbetter, Deputy Sheriff contacted Sheriff's Records and requested a photo line-up containing plaintiff's twelve-year-old DMV photo.

22. On July 19, 2007, Deputy Forest contacted Wharton at Dr. Chin's dental office and explained to her that he wanted to conduct a photo lineup to see if she could identify the patient involved in the fraudulent insurance claim. Six DMV photos were placed in plain manila envelopes and presented to Wharton. Plaintiff's DMV photo was placed in Envelope No. 5.

4
COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

23. After looking at the photos, Wharton pointed to envelope number five but expressed uncertainty about her selection, stating that she was "pretty sure" it was the patient who visited the office. When Deputy Forest asked Wharton to measure the certainty of her selection on a scale of one to ten, Wharton said "seven." Wharton said that the other pictures did not look like her.

24. On July 24, 2007, Deputy Forest contacted Dr. Chin at his office and explained to him that he wanted to conduct a photo lineup to see if he could identify the patient.

25. Six DMV photos were placed in plain manila envelopes and presented to Dr. Chin. Plaintiff's DMV photo was placed in Envelope No. 3. After looking at the photos, Dr. Chin pointed to the picture in envelope three. Like Wharton, Dr. Chin was not sure about his selection, stating that plaintiff's DMV photo was "the most like her." Dr. Chin stated that the other five photos did not look like the patient.

26. On July 25, 2007, at or around 11:00 a.m., Deputy Forest visited the UMC-USA corporate offices in Sunnyvale, California, and asked to speak with someone in Human Resources. The UMC-USA receptionist contacted Weiling Huang ("Huang"), the Human Resources Manager at UMC-USA. Deputy Forest told Huang that they were looking for and wanted to speak to plaintiff. Huang told Deputy Forest that plaintiff was UMC-USA's Vice-President of Technology Applications and was currently unavailable. Deputy Forest left his dispatch number with Huang and asked her to call him when plaintiff would be available.

27. At or around 12:00 noon, Huang and plaintiff called Deputy Forest's dispatch number. After receiving no response for five to ten minutes, plaintiff and a co-worker, T.J. Lin ("Lin") went to a nearby restaurant for lunch. Plaintiff told Huang to contact her if Deputy Forest called back.

28. At or around 12:10 p.m., Deputy Forest returned to the UMC-USA office. The receptionist contacted Huang, who called plaintiff on her cell phone. Plaintiff and Lin immediately left the restaurant to return to UMC-USA to speak with Deputy Forest.

29. When plaintiff arrived at UMC-USA, she entered a conference room where Deputy Forest and another officer were waiting for her. Shortly thereafter, Deputy Forest read plaintiff her rights and informed her that she was under arrest.

30. Deputy Forest told plaintiff about Yiu's report of identity theft and insurance fraud, showed plaintiff the Dental Registration History Form completed by the patient, and told plaintiff that it was her handwriting. Deputy Forest made this statement about the handwriting on the Form knowing that no comparison of plaintiff's handwriting had been done.

31. After looking at the Form, plaintiff told Deputy Forest that she had never seen it before and assured him that it was not her handwriting. Although Deputy Forest had not taken a handwriting sample from plaintiff, he told her that the handwriting on the Form had been identified as a match with her "public record." Deputy Forest asked plaintiff for a sample of her handwriting for comparison.

32. Deputy Forest also showed plaintiff a bill from Dr. Chin's office. Plaintiff recognized the company logo on the bill because she had mistakenly received mail from Dr. Chin's office approximately two weeks earlier. The bill was sent to her address, 135 Rio Robles, Apartment 338 in San Jose, but listed another name. Plaintiff had placed the bill in the outgoing mailbox at her apartment complex so the Post Office could deliver the bill to the correct person.

33. Although there was very little evidence connecting plaintiff to the incident, Deputy Forest said that there was a lot of evidence pointing to her. When she asked him to explain, he told plaintiff that he had shown her DMV photo to Dr. Chin and his assistant and that both had "identified" her. To the contrary, neither Dr. Chin nor Wharton had been able to "identify" plaintiff.

34. Deputy Forest continued to press plaintiff, stating that he "hoped she had an alibi" and also told her that the Sheriff's Office had "her" x-ray from Dr. Chin's office, despite his knowledge that no x-ray comparison had been done. Plaintiff explained to Deputy Forest that it was not her x-ray because she had never visited Dr. Chin's office. Plaintiff then told Deputy Forest that she was fully insured under UMC-USA's dental insurance plan for dental x-rays and

cleaning and that it would be senseless for her to use another's dental insurance for this purpose. Deputy Forest expressed his doubts, stating that sometimes people have "poor judgment."

35. To prove her innocence, plaintiff offered to go to her dentist's office, Michael Cheng, DDS, in Sunnyvale, California, 2.6 miles away, to compare her x-ray with the one from Dr. Chin's office. Deputy Forest refused plaintiff's request, telling plaintiff that this was unnecessary because the x-rays from Dr. Chin's office were hers.

36. After rejecting plaintiff's explanations and attempts to prove her innocence, Deputy Forest told her that she was under arrest for insurance fraud, identity theft and forgery. Plaintiff's warrantless arrest was unreasonable and made without probable cause.

37. Plaintiff was shocked when she was arrested and explained to Huang what was transpiring. When Huang entered the room, Deputy Forest repeated the felony charges against plaintiff. Huang tried to explain to Deputy Forest that UMC-USA had a generous dental plan, but he interrupted her and told her they had to transport plaintiff in handcuffs in the backseat of his police vehicle.

38. Deputy Forest told Huang that they were taking plaintiff to a "police station" at 191 West Hedding Street in San Jose to obtain a handwriting sample and that she could be picked up in about four hours. However, Deputy Forest took plaintiff into custody to effect her arrest, not obtain her handwriting sample. Deputy Forest also told Huang that an attorney would not be "helpful" to plaintiff on this day

39. When the deputies began to escort plaintiff out of the UMC-USA office, plaintiff asked if she could have something to eat since she had missed her lunch. Deputy Forest refused her request and told plaintiff that the officers were hungry, too. Huang did manage to grab a cup of soup for plaintiff to swallow quickly as she was escorted from the UMC-USA office.

40. Once outside, plaintiff was handcuffed and forced into Deputy Forest's vehicle.

41. Although Deputy Forest told Huang that plaintiff would be transported to the 191 West Hedding Street location, plaintiff was taken to the Main Jail at 150 West Hedding Street in San Jose. Plaintiff was booked on felony charges of insurance fraud, identity theft and forgery.

7

COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

42. After booking, the deputies sat plaintiff on a bench. While she was waiting, plaintiff again asked the deputies to obtain her x-rays from her dentist in Sunnyvale, California to compare to the x-ray from Dr. Chin's office. Plaintiff's request was refused.

43. While at the Main Jail, Deputy Forest told plaintiff that the judge might allow her to leave without bail since she had no prior criminal record, but then said that "the ladies here are not the types of people you're used to hanging out with, so this will be a life-growing experience for you." Deputy Forest made this statement to frighten plaintiff. He succeeded.

44. UMC-USA posted a $45,000 bail bond for plaintiff, paying $4,500 as a premium. Plaintiff reimbursed UMC-USA for the $4,500 expense.

45. Plaintiff was released at approximately 9:00 p.m., eight hours after her arrival at the Main Jail. During her stay, plaintiff was given only a few pieces of bread and a sip of water.

46. On the date of her arrest, plaintiff retained attorney John Williams of the Manchester, Williams and Seibert law firm, located at 125 South Market Street, Suite 1100, San Jose, CA 95113. Later that day, John Williams made telephone calls to Deputy Forest and Detective Alan Pham of the Sheriff's Office.

47. On July 26, 2007, after conferring with plaintiff, John Williams again attempted to contact Detective Pham but received no response.

48. On July 30, 2007, Ben Williams, another attorney at Manchester, Williams and Seibert, contacted Deputy District Attorney Tsui in the Santa Clara County District Attorney's Office ("District Attorney's Office").

49. On July 31, 2007, Deputy District Attorney Tsui contacted Ben Williams and said that the District Attorney's Office had not received any reports from the Sheriff's Office about plaintiff's arrest. That same day, Ben Williams offered to produce plaintiff's dental x-rays to the District Attorney's Office or the Sheriff's Office to compare with the dental x-rays of the patient. Deputy District Attorney Tsui told Ben Williams that he would have to deal directly with Detective Pham of the Sheriff's Office but said that he would call Detective Pham.

8
COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

42. After booking, the deputies sat plaintiff on a bench. While she was waiting, plaintiff again asked the deputies to obtain her x-rays from her dentist in Sunnyvale, California to compare to the x-ray from Dr. Chin's office. Plaintiff's request was refused.

43. While at the Main Jail, Deputy Forest told plaintiff that the judge might allow her to leave without bail since she had no prior criminal record, but then said that "the ladies here are not the types of people you're used to hanging out with, so this will be a life-growing experience for you." Deputy Forest made this statement to frighten plaintiff. He succeeded.

44. UMC-USA posted a $45,000 bail bond for plaintiff, paying $4,500 as a premium. Plaintiff reimbursed UMC-USA for the $4,500 expense.

45. Plaintiff was released at approximately 9:00 p.m., eight hours after her arrival at the Main Jail. During her stay, plaintiff was given only a few pieces of bread and a sip of water.

46. On the date of her arrest, plaintiff retained attorney John Williams of the Manchester, Williams and Seibert law firm, located at 125 South Market Street, Suite 1100, San Jose, CA 95113. Later that day, John Williams made telephone calls to Deputy Forest and Detective Alan Pham of the Sheriff's Office.

47. On July 26, 2007, after conferring with plaintiff, John Williams again attempted to contact Detective Pham but received no response.

48. On July 30, 2007, Ben Williams, another attorney at Manchester, Williams and Seibert, contacted Deputy District Attorney Tsui in the Santa Clara County District Attorney's Office ("District Attorney's Office").

49. On July 31, 2007, Deputy District Attorney Tsui contacted Ben Williams and said that the District Attorney's Office had not received any reports from the Sheriff's Office about plaintiff's arrest. That same day, Ben Williams offered to produce plaintiff's dental x-rays to the District Attorney's Office or the Sheriff's Office to compare with the dental x-rays of the patient. Deputy District Attorney Tsui told Ben Williams that he would have to deal directly with Detective Pham of the Sheriff's Office but said that he would call Detective Pham.

50. On August 2, 2007, Ben Williams received a telephone call from Detective Pham, who said that he wanted to get a copy of plaintiff's dental x-rays from Dr. Cheng's dental office. Ben Williams called Detective Pham and suggested that the two of them and plaintiff meet at Dr. Cheng's office at 2:00 PM.

51. At 2:00 PM on August 2, 2007, Detective Pham, Ben Williams and plaintiff met at Dr. Cheng's office. A new set of plaintiff's dental x-rays was taken. Detective Pham was present when the x-rays were taken and was provided a copy of them. Ben Williams and Detective Pham then arranged to go to Dr. Chin's dental office in Milpitas to compare plaintiff's x-rays with those of the patient. However, Dr. Chin was not in the office that day or the following day. As noted, on the date of plaintiff's arrest, Deputy Forest had told plaintiff that the Sheriff's Office had "her" x-ray from Dr. Chin's office.

52. On August 3, 2007, Detective Pham called Ben Williams to tell him that he would set up an appointment with Dr. Chin's office on Monday, August 6, 2007.

53. On August 6, 2007, Ben Williams was unable to reach Detective Pham after multiple attempts. Later that day, Detective Pham's supervisor (name unknown) called Ben Williams to let him know that Detective Pham's wife had gone into labor and that he would not be available until August 10, 2007 at the earliest. The supervisor also stated that he was unclear if the x-ray comparison could be done by another detective in the interim.

54. On August 6, 2007, Ben Williams called Deputy District Attorney Tsui to see what would happen if nothing were done by the Sheriff's Office by plaintiff's arraignment date. Deputy District Attorney Tsui said that the District Attorney's Office "would not intervene" in an ongoing investigation by the Sheriff's Office.

55. On August 8, 2007, Ben Williams called the Sheriff's Office to advise that his office would send a letter asking them to move forward with the dental x-ray comparison in advance of the August 10 arraignment date.

56. Finally, on August 8, 2007, two days before plaintiff's arraignment and six days after obtaining a copy of plaintiff's x-rays, Detective Pham contacted Ben Williams and informed him that after a comparison of the x-rays, there was no match and "the case" would be closed by the Sheriff's Office.

57. On August 10, 2007, Ben Williams picked up the no complaint notice in Sunnyvale, California.

58. The total bill for the legal services provided by Manchester, Williams and Seibert to plaintiff was $10,762.50.

59. Although she was never formally charged with a criminal offense, plaintiff received solicitations by mail from criminal defense attorneys within days of her arrest.

60. As a result of defendants' outrageous conduct, plaintiff has suffered severe emotional distress and has sought medical treatment for same.

### FIRST CAUSE OF ACTION
(Violation of Civil Rights Under 42 U.S.C. § 1983—Fourth Amendment – Against All Defendants)

61. Plaintiff hereby incorporates by reference paragraphs 1 through 60, inclusive.

62. On July 25, 2007, defendants intentionally and illegally seized and arrested plaintiff. The arrest was without a warrant and without probable cause that plaintiff had committed any unlawful act.

63. In doing the acts complained of herein, defendants were acting under color of state law.

64. Defendants' warrantless arrest of plaintiff deprived her of her right to be free from unreasonable seizure guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

65. Defendants, in doing the acts complained of herein, were acting in accordance with a custom, policy or practice of the County.

COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. ____

66. Furthermore, plaintiff is informed and believes and thereon alleges that defendants' actions were the direct and proximate result of Santa Clara County's failure to train its deputy sheriffs adequately regarding probable cause, warrantless arrests, and insurance fraud investigations. Such failure to train amounts to deliberate indifference to the rights of the persons with whom the Sheriff's Office comes into contact.

67. Plaintiff is informed and believes and thereon alleges that defendants' actions were the direct and proximate result of the negligence of Sheriff's Office in hiring, retaining, and supervising its deputy sheriffs. Such negligence in hiring, retaining, and supervising its deputy sheriffs amounts to deliberate indifference to the rights of persons with whom the Sheriff's Office comes into contact.

68. Further, plaintiff is informed and believes and thereon alleges that, by and through the conduct of Deputy Forest, the Sheriff's Office ratified Deputy Forest's improper use of his position to cause the unlawful arrest of plaintiff and endorsed Deputy Forest's other abuse of his official position.

69. In doing the acts complained of herein, defendants were acting under color of state law. Specifically, Deputy Forest's actions were under the pretense of performing his official duties as deputy sheriff.

70. As a direct and proximate result of the wrongful acts alleged herein, plaintiff has suffered loss of reputation, respect, shock, despair, humiliation, mental anguish, and emotional distress, and was deprived of her constitutional rights, as described above. Plaintiff also suffered pecuniary and consequential damages in an amount to be proven at trial.

71. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and justify an award of exemplary and punitive damages against Deputy Forest.

72. Pursuant to 42 U.S.C. Section 1988, plaintiff is entitled to recover reasonable attorney's fees. Plaintiff has incurred and will continue to incur reasonable attorney's fees and costs in an amount to be proven as provided by law.

## SECOND CAUSE OF ACTION

**(Violation of Civil Rights Under California Civil Code § 52.1 – Against All Defendants)**

73. Plaintiff hereby incorporates by reference paragraphs 1 through 72, inclusive.

74. Defendants' conduct interfered with the exercise and enjoyment of plaintiff's rights under both the Constitution and statutes of the United States and California, which guarantee her right to be free from unreasonable arrest and seizure.

75. Defendants interfered with plaintiff's rights by arresting her without probable cause that she had committed any illegal act.

76. As a direct and proximate result of the wrongful acts alleged herein, plaintiff has suffered loss of reputation, respect, shock, despair, humiliation, mental anguish, and emotional distress, and was deprived of her constitutional rights, as described above. Plaintiff suffered pecuniary and consequential damages in an amount to be proven at trial.

77. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and justify an award of exemplary and punitive damages against Deputy Forest.

78. Pursuant to California Civil Code Section 52.1(h), plaintiff is entitled to recover her attorney's fees and costs. Plaintiff has incurred and will continue to incur reasonable attorney's fees and costs in an amount to be proven as provided by law.

## THIRD CAUSE OF ACTION

**(False Arrest and False Imprisonment – Against All Defendants)**

79. Plaintiff hereby incorporates by reference paragraphs 1 though 78, inclusive.

80. Defendants falsely arrested plaintiff without a warrant, without probable cause, and without any reasonable belief that plaintiff had committed any illegal act.

81. Defendants detained plaintiff following the unlawful arrest.

82. As a direct result of and proximate result of the wrongful acts alleged herein, plaintiff has suffered loss of reputation, respect, shock, despair, humiliation, mental anguish, and emotional distress, as well as pecuniary and consequential damages in an amount to be proven at trial.

83. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and justify and award of exemplary and punitive damages against Deputy Forest.

### FOURTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress – Against All Defendants)**

84. Plaintiff hereby incorporates by reference paragraphs 1 through 83, inclusive.

85. The conduct of defendants alleged herein was extreme and outrageous, and with the intention of causing emotional distress to plaintiff, or with reckless disregard of the probability of emotional distress.

86. As a direct and proximate result of defendants' conduct, plaintiff suffered severe and extreme emotional distress, including shock, despair, humiliation, mental anguish, and emotional distress, as well as pecuniary and consequential damages in an amount to be proven at trial.

87. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and justify and award of exemplary and punitive damages against Deputy Forest.

### FIFTH CAUSE OF ACTION

**(Negligent Infliction of Emotional Distress – Against All Defendants)**

88. Plaintiff hereby incorporates by reference paragraphs 1 through 87, inclusive.

89. Defendants owed a duty of care to plaintiff, which was breached by the acts mentioned above. Because of the negligence and carelessness of Deputy Forest, and as a proximate result thereof, plaintiff suffered severe and extreme emotional distress including shock, despair, humiliation, mental anguish, and emotional distress, as well as pecuniary and consequential damages in an amount to be proven at trial.

90. As a proximate result of the wrongful acts alleged herein, plaintiff has been damaged in an amount not yet ascertained, according to proof at the time of trial.

91. Deputy Forest's acts alleged above were willful, wanton, malicious, and oppressive, and justify an award of exemplary and punitive damages against Deputy Forest.

COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

## SIXTH CAUSE OF ACTION

### (Negligence – Against All Defendants)

92. Plaintiff hereby incorporates by reference paragraphs 1 through 91, inclusive.

93. Deputy Forest owed a duty of care to plaintiff, which was breached by the acts mentioned above.

94. As a direct and proximate result of the negligence and carelessness of Deputy Forest, plaintiff sustained and suffered damages in an amount according to proof at the time of trial.

95. Deputy Forest's acts alleged above were willful, wanton, malicious, and oppressive, and justify an award of exemplary and punitive damages against Deputy Forest.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. For general damages in an amount according to proof;
2. For compensatory damages in an amount according to proof;
3. For exemplary and punitive damages against Deputy Forest;
4. For reasonable attorney's fees under 42 U.S.C. § 1988(b);
5. For reasonable attorney's fees under California Civil Code § 52.1(h);
6. For costs of suit herein incurred; and
7. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all of the issues.

DATED: August 25, 2008

McMANIS FAULKNER

JAMES McMANIS
GEOFFREY BENTZEL

Attorneys for Plaintiff,
MING-YIN HAO

14
COMPLAINT FOR DAMAGES: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983); VIOLATION OF CIVIL CODE § 52.1; FALSE IMPRISONMENT AND FALSE ARREST; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE
CASE NO. _____

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
MING-YIN HAO

### DEFENDANTS
County of Santa Clara, a public entity, Santa Clara County Sheriff's Office, a department of the County of Santa Clara, Daniel A. Forest, an individual,

(b) County of Residence of First Listed Plaintiff   SANTA CLARA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   SANTA CLARA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

E-FILING

(c) Attorney's (Firm Name, Address, and Telephone Number)

James McManis, Geoffrey Bentzel
McManis Faulkner
50 W. San Fernando Street, 10th Fl., San Jose, CA 95113
(408) 279-8700

Attorneys (If Known)

ADR    C08 04048 PVT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury— | 620 Other Food & Drug | 423 Withdrawal | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product | Med. Malpractice | 625 Drug Related Seizure | 28 USC 157 | 430 Banks and Banking |
| 140 Negotiable Instrument | Liability | 365 Personal Injury — | of Property 21 USC 881 | | 450 Commerce |
| 150 Recovery of Overpayment | 320 Assault, Libel & | Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 460 Deportation |
| & Enforcement of Judgment | Slander | 368 Asbestos Personal | 640 R.R. & Truck | 820 Copyrights | 470 Racketeer Influenced and |
| 151 Medicare Act | 330 Federal Employers' | Injury Product | 650 Airline Regs. | 830 Patent | Corrupt Organizations |
| 152 Recovery of Defaulted | Liability | Liability | 660 Occupational | 840 Trademark | 480 Consumer Credit |
| Student Loans | 340 Marine | PERSONAL PROPERTY | Safety/Health | | 490 Cable/Sat TV |
| (Excl. Veterans) | 345 Marine Product | 370 Other Fraud | 690 Other | | 810 Selective Service |
| 153 Recovery of Overpayment | Liability | 371 Truth in Lending | LABOR | SOCIAL SECURITY | 850 Securities/Commodities/ |
| of Veteran's Benefits | 350 Motor Vehicle | 380 Other Personal | 710 Fair Labor Standards | 861 HIA (1395ff) | Exchange |
| 160 Stockholders' Suits | 355 Motor Vehicle | Property Damage | Act | 862 Black Lung (923) | 875 Customer Challenge |
| 190 Other Contract | Product Liability | 385 Property Damage | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| 195 Contract Product Liability | 360 Other Personal Injury | Product Liability | 730 Labor/Mgmt.Reporting | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise | | | & Disclosure Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | 740 Railway Labor Act | | 892 Economic Stabilization Act |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate | 790 Other Labor Litigation | | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | Sentence | 791 Empl. Ret. Inc. | FEDERAL TAX SUITS | 894 Energy Allocation Act |
| 230 Rent Lease & Ejectment | 443 Housing/ | Habeas Corpus: | Security Act | 870 Taxes (U.S. Plaintiff | 895 Freedom of Information Act |
| 240 Torts to Land | Accommodations | 530 General | | or Defendant) | 900Appeal of Fee |
| 245 Tort Product Liability | 444 Welfare | 535 Death Penalty | IMMIGRATION | 871 IRS—Third Party | Determination Under Equal Access |
| 290 All Other Real Property | 445 Amer. w/Disabilities - | 540 Mandamus & Other | 462 Naturalization Application | 26 USC 7609 | to Justice |
| | Employment | 550 Civil Rights | 463 Habeas Corpus – | | 950 Constitutionality of |
| | 446 Amer. w/Disabilities – Other | 555 Prison Condition | Alien Detainee | | State Statutes |
| | [x] 440 Other Civil Rights | | 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C 1983

Brief description of cause:
Violation of Fourth Amendment rights. False arrest and imprisonment. Negligence

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [x] SAN JOSE

DATE
August 25, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**  **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**  **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
   Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.